IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

vs.                            Case Nos.: 1:12cr14/MW/GRJ
                                      1:14cv88/MW/GRJ

BRANDON EDWARD SIMMONS

_____

## REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   (ECF No. 108.) The Government has filed a response (ECF No. 112) and Petitioner has filed a reply.   (ECF No. 113.)   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   See N.D. Fla. Loc. R. 72.2; see also 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, the Court concludes that Petitioner has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   See Rules Governing Section 2255 Cases 8(a) and (b).

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

## PROCEDURAL BACKGROUND

Petitioner was charged in a single count indictment with using a facility and means of interstate commerce to entice an individual under the age of 18 to engage in sexual activity in violation of 18 U.S.C. § 2422(b). (ECF No. 1.)   According to the facts as set forth in the Second Revised Final Presentence Investigation Report ("PSR") (ECF No. 68), the charges stemmed from an investigation initiated by the Alachua County Sheriff's Office of individuals using the internet to sexually exploit children.   A Gainesville Police Detective responded to an ad Petitioner had placed on an e-commerce website titled "Looking for your first time?-M4W-32 (Ocala)" and began corresponding with Petitioner while portraying a 14 year old female named Becca.   They engaged in sexually explicit conversation and discussed meeting at what was an undercover residence.   Approximately nine days after their first communication, Petitioner was arrested at the residence with two used condoms on his person.   He spontaneously stated during his arrest "I swear I thought she was 18" and claimed to have misread the parts of the communication where Detective Moore, as Becca,

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

said that she was fourteen years old and in the eighth grade.   (ECF No. 68, PSR ¶¶ 7-12.)

Petitioner was originally represented by Assistant Federal Public Defender Darren Johnson, who moved to withdraw due to a conflict.   (ECF Nos. 20, 21.)[1]   Attorney Stephen Bernstein was appointed thereafter. (ECF No. 21.)   Petitioner's first trial, conducted in July of 2012 resulted in a hung jury.   (ECF No. 41.)   Petitioner was re-tried, and convicted, in August of 2012.   (ECF No. 57.)   He sent a letter to the court requesting appointment of a new attorney for sentencing and appeal due to counsel's "inadequate representation." (ECF No. 60.)   After a hearing, the court granted Defendant's request and appointed Daniel Daly to represent him. (ECF No. 65.)

Petitioner's PSR calculated his total offense level of 30 based on a base offense level of 28 and a two level adjustment for the use of a computer.   He did not receive an adjustment for acceptance of responsibility.   (ECF No. 68, PSR ¶¶ 18-25.)   Petitioner had no prior

---

[1] Petitioner claims not to know why his case was reassigned to Mr. Bernstein.   (ECF No. 108 at 8.)

criminal history and his criminal history category was I. The applicable guidelines range was 97 to 121 months, but pursuant to 18 U.S.C. § 2422(b) Petitioner was subject to a statutory minimum term of 10 years imprisonment and a maximum of life. (ECF No. 68, PSR ¶¶ 60, 61.)

Before sentencing, the case was transferred to another district judge. (ECF No. 77.) At sentencing, the Government objected to the lack of application of an obstruction adjustment, and the defense objected to the statutory mandatory minimum sentence as unconstitutional. Both objections were overruled. (ECF No. 92 at 4-15). On April 15, 2013, the court sentenced Petitioner to a term of 120 months imprisonment followed by 30 years of supervised release. (ECF Nos. 81-83, 92.)

Petitioner appealed, raising several grounds for relief. He claimed that the evidence was insufficient to believe he was communicating with a minor or that he attempted to entice her to engage in sexual activity, that the Government entrapped him or otherwise engaged in "outrageous conduct" and that the district court erred in certain evidentiary rulings. The Eleventh Circuit affirmed his conviction. (ECF Nos. 104, 105.)

In the present motion, Petitioner raises five ground for relief, each asserting that trial counsel Bernstein was constitutionally ineffective. The Government opposes the motion.

## LEGAL ANALYSIS

## General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S.

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*,

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218 F.3d at 1314. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples*

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

*v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

### Petitioner's Claims for Relief

### 1.  *Failure to move to suppress evidence*

Defendant claims that counsel should have moved to suppress what

the Government introduced as the emails that were sent by Sergeant

Rebekah Moore in her undercover capacity.    He argues that there was

nothing distinguishing a draft email from an email that had actually been

sent.    As such, he contends that he was convicted on the basis of

information contained in emails that the Government had not proven Sgt.

Moore had actually sent.    One of the emails he contends was a draft

contained the information that she was 14 years old.

Sgt. Moore brought up the existence of draft emails on cross-

examination.    She noted that the email correspondence between her and

Petitioner was documented and tracked using a program called

Thunderbird.    As she was collecting information and typing emails, she

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

would drag the emails into a folder. Sgt. Moore noted that at times, the program would record the email as being a message, even though it was only a draft. (ECF No. 96 at 62.) She conceded that she could not tell from the documentation in her possession at trial which items were drafts and which were the actual emails although she said that law enforcement had it "in the file." (*Id.* at 62-63.) Sgt. Moore recalled three drafts, as opposed to emails, and characterized them as "repeats of emails" or "duplicate emails" which had not been sent at the time the draft was saved. (*Id.* at 63-64). The implication, then, is the drafts were earlier versions of messages that were sent after having been saved as drafts. The Government says that Petitioner's claim--- that none of the emails submitted as evidence could be verified as having been sent--- is false. (ECF No. 112 at 11.)

The lack of certainty about which emails had been sent was a viable matter for argument at trial, not the basis for a motion to suppress. The testimony adduced at trial established that there was proof that the emails had been sent, as did Petitioner's responses thereto. The law is well-established that counsel is not ineffective for failing to preserve or argue a

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

meritless claim.    *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir.

2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233

(11th Cir. 2008)).    Counsel did not perform deficiently by failing to raise

this issue.

### 2. *Failure to advocate theory of the case and maintain communication*

Petitioner's second claim contains two parts.    First he contends that

counsel failed to advocate his "theory of the case."    He asserts that when

he first met with Mr. Bernstein, he presented him with what he describes as

"a 19-page document that thoroughly explained his innocence," which he

had also submitted to his original attorney, Darren Johnson.    (ECF No.

108 at 8.)    Petitioner complains that counsel's defense at the first trial was

incompatible with Petitioner's documented explanation of the case, and as

such he was unable to take the stand in his own defense.    Defendant says

that he attempted to meet with counsel to discuss his disagreement with

the presented defense, but despite multiple requests was unable to do so.

At the second trial, counsel persisted with the same defense, and again

Petitioner concluded that he could not testify as a result.

Petitioner did not offer the details regarding his explanation of the case until his reply. (ECF No. 113 at 5-9.) He explains that the advertisement he placed on Craigslist was actually in response to another advertisement he had seen on the website. The advertisement in question purportedly had been placed by an 18 year old African-American female who was looking for her "first experience." Petitioner explains that when he attempted to respond to the advertisement, he received notification from the Craigslist automated system that the advertisement had been removed. He asserts that he placed his advertisement in an attempt to communicate with this specific poster, not as an attempt to prey on children. (ECF No. 113 at 5)

Petitioner also claims that the response from Becca was not the first response he received that involved a minor. He did not say whether he reported or took any action against the previous responses involving minors. Instead, he states that he knows that Craigslist is a haven for "scammers," and, knowing this, he played along with Becca to see how the scam was going to unfold. (ECF No. 113 at 5-6.)

Next, Petitioner contends that he had on-line conversations with more than one individual who responded to his ad, and that when he resumed communication with Becca after a brief respite, he confused her for another female of legal age.   Thus, he believed that the sexually explicit conversation he had with Becca on January 31 was with an 18 year old. Petitioner also claims that he did not remember having the conversation, but only learned of it when he read it the next day on his phone because he had been so intoxicated on that night.

Petitioner explains that three days after the sexually explicit conversation, on the day of his arrest, he believed Becca to be 18 and he assumed the conversation was a hoax.   He says that he was "put on alert" when the individual with whom he was communicating would not give him her address.   Petitioner states that since he needed to go to Gainesville anyway, he continued to drive.   As proof of his belief that he had been talking to a "supposed 18 year old" he references the message he sent to Becca saying "I'm just surprised that you're 18 and you still haven't had sex."   He says that when Becca responds that she was confused, and that

she was 14, he ceased any communication of a sexual nature.    (ECF No.
113 at 6-7.)

Petitioner asserts that at this point he realized the interaction was
definitely some sort of ploy.    He claims that he did not know that law
enforcement conducted such snares, but continued towards the planned
meeting with Becca out of curiosity, as well as because he needed to test
his truck's transmission on the interstate, and he needed to visit the
Gainesville Mall.

As he approached the meeting place, Petitioner had only a
neighborhood, rather than an address.    He assumed "the trap was set for
some type of robbery" and that out of curiosity "he proceeded to try and
figure it out, thinking he would simply drive away if presented with danger."
(ECF No. 113 at 7.)    Because he thought it was a robbery ploy, when
Becca called him twice telling him the specific house to come to and asking
him to come inside, he refused.    Petitioner was concerned for his physical
safety, and despite having followed through to that point, it was not "worth
his life and well-being to solve the mystery."    (*Id.* at 8.)    Petitioner said
that while driving in Becca's neighborhood, he drove three times by a

brown pickup with a man parked in the drivers' seat, and he assumed this was the man who intended to rob or assault him. After noticing the man, he drove back around and stopped in front of the house where the meeting was supposed to take place. He waited outside for a brief time, and then decided to leave, at which point outside arrest team closed in and effectuated the arrest.

Petitioner insists that he was not aware he had broken any laws, and continues to maintain that he has not. He relates that "in the dramatic shock of the arrest and the four-hour interrogation that followed, the Defendant felt it best to go along with the idea that, even though not in a sexual manner, he had believed to be meeting with a real person." (ECF No. 113 at 8). Petitioner explains that he thought that if he acknowledged that he knew the situation presented a trap, law enforcement would infer that the reason he had not gone in was because he believed it to be a law enforcement sting. Petitioner purportedly thought that if he explained his "legitimate confusion" related to Becca's age, he would be allowed to leave. (ECF No. 113 at 9.)

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

Petitioner now contends that when he provided this information to Mr. Bernstein, Bernstein told him that his story was not credible. (ECF No. 113 at 9.) Counsel told him that the defense would be comprised of a portion of the interrogation video, a witness to attest to the events of the night of January 31, and counsel's own closing remarks. Petitioner complains that counsel did not explain which portion of the interrogation interview would be used or what would be addressed in the closing argument. He further notes that counsel did not interview the purported witness and that he provided her the incorrect date for both trials.

Petitioner's story, even as he presents it, strains credulity. It was not an unreasonable strategic decision for counsel to decline to pursue what he reasonably and understandably believed to be an incredible defense presented by his client. Counsel's performance in this regard was not constitutionally unreasonable, and Petitioner cannot show prejudice. To the extent that he contends counsel did not maintain communication with him because counsel was unwilling to further discuss presentation of Petitioner's version of events to the jury, he again has not shown prejudice.

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

### 3. *Failure to call a witness for trial*

Petitioner contends that counsel's failure to call Ms. Story Sargent[2] as a witness at trial was constitutionally ineffective. Petitioner bears a heavy burden to show prejudice where he alleges ineffective assistance in failing to call a witness because "often allegations of what a witness would have testified to are largely speculative." *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (quoting United States v. Guerra, 628 F.2d 410, 413 (5th Cir.1980)).

Petitioner identifies Ms. Sargent as his "working manager" at the location where he tended bar. Petitioner claims that she could have testified that on the night when Petitioner allegedly had a sexually explicit conversation with Becca he had allowed his cell phone to be used as a music player for the restaurant. This would have left his phone open, or unlocked, without password protection to be accessed by employees or patrons. Petitioner states that Ms. Sargent also could have testified that Petitioner was let off work early that evening but stayed overnight on the

---

[2] Petitioner spells her name Storey Sergeant in his reply. (ECF No. 113 at 10.)

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

premises after becoming so intoxicated that he could not drive. (ECF No. 108 at 10.)

The reason Petitioner believes this testimony would have been significant is not clear from the initial motion. It does not appear from his reply that he suggests that another individual participated in the conversation between him and the fictitious Becca. Rather, he attributes his confusion and inability to recall the communication in question because of his extreme intoxication.

Petitioner admitted his communication with the undercover agent posing as Becca in a lengthy post-arrest interview during which he initially claimed that he was traveling to Gainesville to have sex with an 18 year old virgin. (ECF No. 96 at 88, 96-97.) Gainesville Police Officer Scott Meffen testified that Petitioner suggested perhaps he became confused and confused eighth grade and 14 years old with 18 because he "dropped the four and kind of moved the eight over and made it 18 years old" in his mind. (ECF No. 96 at 97.) Petitioner claimed that he did not realize she was 14 year old until he was driving towards Gainesville, and because he "didn't want to hurt her feelings" he continued to the target location. (*Id.*)

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

He told law enforcement that upon his arrival at Becca's house he did not want to be tempted, and he decided not to exit his vehicle, instead hoping that Becca would come outside so he could befriend her and take her to McDonald's to get ice cream.    (*Id.*)

In light of the evidence presented at trial, particularly with respect to Petitioner's post-arrest interview, Ms. Sargent's proffered testimony would not have altered the outcome of the proceedings.    Despite Petitioner's contrary belief, testimony of Petitioner's extreme intoxication would not necessarily have been a good thing, particularly since he had been told prior to this date that the person who contacted him was a fourteen year old girl.    Petitioner has not established that he was prejudiced by counsel's failure to call Ms. Sargent as a witness at trial.

### 4.  *Failure to pursue available defenses; request jury instructions and investigate*

Petitioner says that he specifically requested counsel to investigate and pursue an entrapment defense, but that Mr. Bernstein repeatedly told him that he could not pursue such a defense without pleading guilty.    Such a statement is legally incorrect, as entrapment is an affirmative defense. Petitioner asserts the fact that counsel told him an entrapment defense was

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

unavailable to him could be verified by his appellate counsel.    He claims that the prosecution showed no evidence to prove predisposition, and as such the outcome of the case would have been different had counsel requested an entrapment discussion.

A lack of predisposition is not the only element required for a successful entrapment defense.    Such a defense contains two elements: 1) Government inducement and 2) lack of predisposition of the defendant to commit the crime before the inducement.    *United States v. Rutgerson*, 822 F.3d 1223, 1234 (11th Cir. 2016); *United States v. Sistrunk*, 622 F. 3d 1328, 1333 (11th Cir. 2010).    A defendant's right to present an entrapment defense is conditional.    "Before an entrapment defense may be presented to the jury, an evidentiary foundation for a valid entrapment defense must be present."    *Sistrunk*, 622 F. 3d at 1333 (quoting *United States v. Ryan*, 289 F. 3d 1339 1343 (11th Cir. 2002)).    A defendant bears the initial burden of proving Government inducement.    *Id.*    The mere suggestion of a crime or initiation of contact is insufficient, as inducement requires an element of persuasion or mild coercion.    *United States v. Padron*, 527 F. 3d 1156, 1160 (11th Cir. 2008) (internal citations and quotations omitted).

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

The Government's conduct must create "a substantial risk that the offense would be committed by a person other than one ready to commit it." *Rutgerson*, 822 F.3d at 1234 (quoting *Ryan*, 289 F.3d at 1343-44 (quoting *United States v. Brown*, 43 F. 3d 618, 623 (11th Cir. 1995))); *Sistrunk*, 622 F. 3d at 1333. After a defendant meets his burden to show some evidence that the Government induced him to commit a crime, "the question of entrapment becomes a factual one for the jury to decide." *Sistrunk*, 622 F. 3d at 1333 (quoting *Ryan*, 289 F.3d at 1344 (quoting *United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977)).

Petitioner cites numerous instances of comments made by the fictitious Becca that, he argues, could be construed as persuasion or mild coercion. For instance, when Petitioner suggested a meeting at the mall, Becca responded: "I don't know about meeting at the mall. Would be hard for you to teach me in front of all those people. Wink." He cites instances of flirtatious comments by Becca which were intended to entice him:

"Excited to see you soon"

"What are you planning on teaching me? Wink."

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

"I'm getting tingly thinking about seeing you."

"Can you tell me something you will do to me tomorrow so I can go to sleep thinking about it? Wink."

"I don't want this tingly feeling to go away. Sad face."

"I just wanted to say good night. Smile."

"So if I flirt with you, you will give me better tips?"

(ECF No. 113 at 12-13.)

On the day of his arrest, in response to the nervousness that Becca expressed, via text, Petitioner suggested that they can stop and grab something to eat.   Becca responded: "LOL I'm not that nervous. Wink. Just tingly."   (ECF No. 113 at 13.)

Petitioner also notes that Becca called Petitioner three times in an attempt to get him into the house, but he never attempted to enter the premises.   Petitioner also insists that he never thought he was truly speaking to a minor and he had no intention of pursuing a sexual encounter with a minor, which, he says, was proven by his refusal to enter the house upon Becca's request.

Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

These comments identified by Petitioner do not rise to the level of egregious or outrageous Government conduct as he suggests. The comments are not sufficient "inducement" to support the affirmative defense of entrapment.

The Eleventh Circuit on appeal said that Petitioner had done no more than showing "the government's mere suggestion of a crime or initiation of contact[, which] is not enough." (ECF No. 104 at 5, quoting *United States v. Brown*, 43 F.3d 618, 623 (11th Cir. 1995).) The Eleventh Circuit further noted that Petitioner "expressed enthusiasm at the prospect of 'teach[ing]'" Becca about sex in response to her concerns about her inexperience. (ECF No. 104 at 5.) And perhaps more notably, pursuit of the affirmative defense of entrapment would have been inconsistent with the defense that Petitioner believed that he was dealing with an 18 year old woman and did not know Becca was 14 until he was en route to Gainesville on the date of his arrest. Viewing the record as a whole, Petitioner has not established that counsel was constitutionally ineffective for failing to request this instruction or pursue an entrapment defense. Nor has he shown that

counsel failed to uncover evidence not presented at trial that would have supported the proffered defense.

**5.** ***Provision of misleading statements to the jury***

Petitioner claims that comments made by his attorney during his closing arguments were misleading to the jury and undermined the proper functioning of the adversarial process.

During closing arguments, defense counsel conceded that the Government's construction of the evidence provided a reasonable conclusion. Mr. Bernstein repeatedly reiterated, however, that the Government's interpretation was not the only reasonable conclusion, and that if other reasonable hypotheses of innocence existed, the Government had not proven its case beyond a reasonable doubt. A jury is "at liberty to select freely among a variety of reasonable alternative constructions of the evidence." *See United States v. Reeder*, 170 F.3d 93, 102 (1st Cir. 1999) (citation omitted). In affirming Defendant's conviction the Eleventh Circuit observed that there were other reasonable results. (ECF No. 104 at 4.) The fact that the jury did not select the construction that would have

exonerated Petitioner of the charges against him did not render counsel's performance constitutionally inadequate.

## Conclusion

For all of the foregoing reasons, the court finds that Petitioner has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Petitioner's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that A[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant, and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); Slack v. McDaniel, 529 U.S.

473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 108) be should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 12th day of April, 2017.


*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


Case Nos.: 1:12cr14/MW/GRJ; 1:14cv88/MW/GRJ

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.